J-S58032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: M.R.B.

APPEAL OF: J.B., MOTHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 180 MDA 2016

Appeal from the Order Entered December 18, 2015
In the Court of Common Pleas of York County
Juvenile Division at No(s): 2015-0125

BEFORE:  GANTMAN, P.J., BOWES, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED AUGUST 12, 2016**

Appellant, J.B. ("Mother"), appeals from the order entered in the York County Court of Common Pleas, which granted the petition of the York County Offices of Children, Youth & Families ("CYF") for involuntary termination of Mother's parental rights to her minor child (born January 2009), M.R.B. ("Child").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On August 11, 2015, CYF filed an application for emergency protective custody of Child, based on allegations of abandonment.  Specifically, CYF learned that sometime in early July 2014, Mother decided she could no longer perform parental duties for Child and left Child in the care of Mother's father ("Maternal Grandfather").  Maternal Grandfather was unable to care for Child, so he contacted Wesley Pritt, Child's second cousin, to see if Mr.

_____

[1] The court also granted CYF's petition for involuntary termination of Father's parental rights.  Father has not challenged that decision.

_____

*Retired Senior Judge assigned to the Superior Court.

Pritt and his wife were willing to parent Child. After several requests, Mr. and Mrs. Pritt agreed; and Child began living with the Pritts and their three children on July 14, 2014. The Pritts tried to enroll Child in school but were unable to do so because they did not have legal custody of Child. When Child came to live with the Pritts, she was one year behind in school. Child also needed medical attention regarding a dental issue. The court granted CYF's application and awarded CYF temporary legal and physical custody of Child; and CYF continued Child's placement with the Pritts. The court held a shelter care hearing on August 13, 2015, after which the court awarded legal and physical custody of Child to CYF; and CYF continued Child's placement with the Pritts. CYF filed a petition for adjudication of dependency on August 14, 2015. Following a dependency hearing, the court adjudicated Child dependent on October 13, 2015, with a goal of adoption.[2]

Since July 2014, Child has been living in the care of others. On October 27, 2015, CYF filed a petition for involuntary termination of Mother's parental rights. The court held a termination hearing on December 18, 2015. At the beginning of the hearing, the parties incorporated into the record the proceedings and filings docketed in the related dependency action. Marilyn Monkowski testified that she is an intake caseworker for CYF. Ms. Monkowski said Mother currently resides in Delaware, and there is no

---

[2] The Family Court in Sussex County, Delaware, previously adjudicated Child dependent on July 11, 2011, based on Mother's abandonment of Child. The Delaware Family Court returned Child to Mother's custody on January 8, 2013.

evidence that Mother is able to maintain and obtain safe, stable, and appropriate housing for herself and Child. Mother did not provide CYF with any documentation of a lawful source of income. Mother made no requests to CYF since Child's adjudication of dependency to visit with Child or for services. Ms. Monkowski said CYF offered Mother family group decision-making services as well as one-way transportation for Mother to visit Child. Mother declined CYF's offer of transportation to visit Child. Mother participated in the family group decision-making by speakerphone, at which time CYF arranged for appropriate times for Mother to call Mr. Pritt to speak with Child. Mother called Mr. Pritt for the first time on the morning of the termination hearing. Ms. Monkowski confirmed that Child is doing well in the Pritts' care, attending school, and participating in play therapy. Ms. Monkowski said Child refers to the Pritts as mom and dad. Ms. Monkowski stated Child has no bond with Mother. Ms. Monkowski opined termination of Mother's parental rights would give Child the permanency she needs so the Pritts can adopt Child.

Mr. Pritt testified Child moved in with his family in July 2014. After Child moved in with the Pritts in July 2014, Mother did not attempt to contact Child or send Child any cards or presents. Mother also provided no financial support for Child. Mr. Pritt said he called Mother a few times and told Mother she could call him anytime to speak with Child or learn about Child's wellbeing; Mother told Mr. Pritt she was too scared to call. While

- 3 -

living with the Pritts, Child admitted looking at pornography on an IPad. Mr. Pritt learned Child had been exposed to sexual behavior while previously living with Mother. Child also told Mr. Pritt she had seen Mother use drugs in the past. Mr. Pritt said Child is doing great in his care and excelling in school. Mr. Pritt stated Child rarely asks about Mother but does ask about Child's brother, who resides with Mother. Mr. Pritt confirmed his willingness to let Child visit her brother and Mother, even if the court terminates Mother's parental rights.

Mother testified by speakerphone. Mother stated she currently resides in Delaware and has been attending a methadone clinic since February 2015. Mother admitted she is unemployed and seeking employment. Mother lives with her boyfriend, who is also unemployed. Mother claimed she was unaware Child was living with the Pritts until six or seven months after Child began living with them. Mother thought Child was still living with Maternal Grandfather during that time. Mother admitted she did not contact the police or report Child as missing when she was uncertain of Child's whereabouts. Mother said she was afraid to contact the Pritts after she learned Child was living with them because Maternal Grandfather told her the Pritts did not want Mother to call them. Mother conceded she last saw Child in July 2014, and has performed no parental duties since then.

At the conclusion of the hearing, the court granted CYF's petition for involuntary termination of Mother's parental rights to Child. On January 15,

2016, Mother filed a timely notice of appeal incorrectly under the Juvenile Court's dependency docket number. Mother filed a second notice of appeal on January 27, 2016, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), under the correct Orphans' Court docket number.

Mother raises two issues for our review:

> DID MOTHER PRESERVE HER APPELLATE RIGHTS BY TIMELY FILING A NOTICE OF APPEAL EVEN THOUGH IT WAS FILED IN THE CLERK OF COURT'S OFFICE RATHER THAN THE ORPHANS' COURT?
>
> DID THE [TRIAL] COURT ABUSE ITS DISCRETION AND ERR AS A MATTER OF LAW IN TERMINATING MOTHER'S PARENTAL RIGHTS WHEN [CYF] FAILED TO MEET ITS BURDEN THAT TERMINATION OF PARENTAL RIGHTS WAS WARRANTED UNDER 23 PA.C.S. SECTION 2511(A)(1) AND (A)(2) IN THAT OBSTACLES WERE PUT IN MOTHER'S WAY WHICH PREVENTED HER FROM LOCATING HER CHILD AND PERFORMING PARENTAL DUTIES?

(Mother's Brief at 3).

In her first issue, Mother argues she timely filed her notice of appeal on January 15, 2016 from the court's December 18, 2015 termination order but inadvertently filed the notice of appeal under the docket number for the dependency action. Mother admits she should have filed her notice of appeal in the Orphans' Court. Mother asserts she filed a second notice of appeal from the termination order on January 27, 2016, in the Orphans' Court under the correct docket number. Mother maintains she filed her Rule 1925(a)(2)(i) statement along with the January 27, 2016 notice of appeal.

Mother insists this Court should consider the current appeal timely where she filed the initial notice of appeal within the requisite thirty-day timeframe but filed it in the wrong office. Mother acknowledges her concise statement was not filed contemporaneously with her initial notice of appeal. Mother emphasizes, however, that the belated filing of her concise statement did not prejudice CYF. Mother concludes this Court should consider her appeal timely and excuse the late filing of her concise statement. We agree.

Pennsylvania Rule of Appellate Procedure 905 provides, in relevant part:

**Rule 905. Filing of Notice of Appeal**

**(a) Filing with clerk.**

(1) Two copies of the notice of appeal, the order for transcript, if any, and the proof of service required by Rule 906 (service of notice of appeal), shall be filed with the clerk of the trial court. …

(2) If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) shall be filed with the notice of appeal and served in accordance with Rule 1925(b)(1).

(3) Upon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the appeal was taken, which date shall be shown on the docket.

(4) If a notice of appeal is mistakenly filed in an appellate court, or is otherwise filed in an incorrect office within the unified judicial system, the clerk shall immediately stamp it with the date of receipt and transmit it to the clerk of the court which entered the order appealed from, and upon payment of an additional filing fee the notice of appeal **shall be deemed filed in the**

**trial court on the date originally filed**.

Pa.R.A.P. 905(a)(1-4) (emphasis added). ***See also*** Pa.R.A.P. 1925(a)(2)(i) (stating in children's fast track appeal, concise statement of errors complained of on appeal shall be filed and served with notice of appeal as required by Rule 905). Rule 905(a)(2) is procedural, not jurisdictional. ***In re K.T.E.L.***, 983 A.2d 745, 747 (Pa.Super. 2009). Thus, non-compliance with Rule 905(a)(2) results in a defective notice of appeal, subject to a case-by-case waiver analysis and disposition. ***Id.*** (declining to quash or dismiss appeal or to waive issues, in light of purpose to expedite disposition of children's fast track appeals, where mother filed her concise statement three days after notice of appeal and late filing did not prejudice other parties in case).

Instantly, Mother timely filed a notice of appeal from the court's December 18, 2015 termination order on January 15, 2016, but she inadvertently filed it under the Juvenile Court's dependency docket instead of the correct Orphans' Court docket. Mother's initial appeal was docketed in this Court at 132 MDA 2016. On January 27, 2016, Mother filed an amended notice of appeal from the court's termination order under the correct Orphans' Court docket number, along with a Rule 1925(a)(2)(i) statement, which was docketed in this Court at 180 MDA 2016. The notice of appeal in the certified record for the present appeal at 180 MDA 2016 contains multiple timestamps indicating the notice of appeal was received by

J-S58032-16

the York County Judicial Center on January 15, 2016, and received in the Orphans' Court division on January 27, 2016. Mother's initial filing on January 15, 2016, preserved that filing date for purposes of the timeliness of this appeal. *See* Pa.R.A.P. 905(4). Thus, we consider Mother's appeal, docketed in this Court at 180 MDA 2016, as timely filed.[3] Additionally, Mother's delayed Rule 1925 statement did not prejudice any other party in this case. Under these circumstances, and in light of the purpose to expedite disposition of children's fast track appeals, we decline to dismiss the appeal or to waive Mother's claims. ***See In re K.T.E.L., supra***.

In her second issue, Mother argues she did not know where Child was living for a significant period. Specifically, Mother asserts that, when she learned Maternal Grandfather had placed Child in the Pritts' care, Mother did not know how to contact the Pritts; so she could not fulfill her responsibilities to parent Child. Mother contends that she left Child in Maternal Grandfather's care and expected to regain custody of Child in the future. When Mother learned Child was living with the Pritts, Mother still believed she would regain custody of Child, once CYF became involved in this case; but CYF denied her that chance. Mother emphasizes that CYF set the goal in this case as adoption upon Child's adjudication of dependency and did not attempt to reunify Mother and Child. Mother avers CYF gave up on her before allowing her an opportunity to show she was capable of caring for

---

[3] In a separate judgment order, we dismiss the companion appeal at 132 MDA 2016 as duplicative.

- 8 -

Child. Mother concludes CYF failed to show Mother evidenced a settled purpose of relinquishing her parental claim to Child required under 23 Pa.C.S.A. § 2511(a)(1), and this Court must reverse the order granting involuntary termination of Mother's parental rights.[4] We disagree.

The standard and scope of review applicable in termination of parental rights cases are as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

> The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing

---

[4] Mother also alleges CYF failed to meet its burden for involuntary termination of Mother's parental rights under Section 2511(a)(2). Mother failed to raise this claim in her concise statement, so it is waived. *See* ***Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005) (holding generally that any issues not raised in Rule 1925 concise statement will be deemed waived on appeal); ***In re L.M.***, 923 A.2d 505 (Pa.Super. 2007) (explaining waiver rules under Rule 1925 apply in context of family law cases). Mother does not contest the court's termination decision under Section 2511(b).

as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

The court granted CYF's petition for involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing

and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1-2), (b). "Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for involuntary termination of parental rights." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super. 2008).

A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition. *In re C.S.*, 761 A.2d 1197 (Pa.Super. 2000) (*en banc*). "Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005). The court must examine the individual circumstances of each case to determine if the evidence, in light of the totality of the circumstances, warrants termination. *Id.*

"Under [S]ection 2511, the trial court must engage in a bifurcated process." *In re I.J.*, 972 A.2d 5, 10 (Pa.Super. 2009).

The initial focus is on the conduct of the parent. The party

seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds delineated in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child…under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.

\*    \*    \*

[A] best interest of the child analysis under [section] 2511(b) requires consideration of intangibles such as love, comfort, security, and stability. To this end, this Court has indicated that the trial court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. Moreover, in performing a "best interests" analysis[, t]he court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*Id.* at 10-12 (internal citations and quotation marks omitted).

Section 2511 outlines certain irreducible minimum requirements of care that parents must provide for their children and a parent who cannot or will not meet the requirements may properly be considered unfit and have her parental rights terminated. ***In re B.L.L.***, 787 A.2d 1007 (Pa.Super. 2001).

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs,

- 12 -

physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of …her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B.,N.M., supra* at 855 (internal citations omitted). Accordingly, "a parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." *Id.* at 856.

"When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). "In cases where there is no evidence of any bond

between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S., supra* at 762-63. "Above all else[,] adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P., supra* at 1121.

Additionally, neither Section 2511(a) nor Section 2511(b) requires a court to consider at the termination stage, whether an agency provided a parent with reasonable efforts aimed at reunifying the parent with her child prior to the agency petitioning for termination of parental rights. *In re D.C.D.*, 629 Pa. 325, 342, 105 A.3d 662, 672 (2014). Although the agency's reasonable efforts should be considered, and even ordered in the appropriate case, nothing in the statute prohibits the court from granting a petition to terminate parental rights under Section 2511 simply because the agency failed to provide reasonable efforts to reunite a parent and child. *Id.* at 346, 105 A.3d at 675.

Instantly, at the conclusion of the termination hearing, the court made the following remarks on the record:

> This is the time set for the matter of the hearing on the petition for involuntary termination of parental rights as it relates to [Child]. We note that [Child] was placed in the care of [CYF] in October of 2015. Prior to that, however, she was placed in the care of the current foster care providers Mr. and Mrs. Pritt.

[C]hild is 6 years old having been born January…2009. We note that she is almost 7 years of age and has had no contact with either parent since at least July of 2014. …

A petition to involuntarily terminate parental rights was filed by [CYF] requesting the court to consider that the parents, by conduct continuing for at least six months preceding the filing of the petition, either evidenced a settled purpose to relinquish their parental claims or failure [or] refus[al] to perform parental duties.

We note that although [CYF] is not required to prove both allegations[,] that they are in the alternative, we do find that [CYF] has provided clear and convincing evidence sufficient to prove that both Mother and Father evidenced a settled purpose to relinquish their parental claim.

Neither one, for a period of more [than] one year prior to the petition, made any efforts to have any contact with their child, to locate their child, or use reasonable efforts to overcome any barriers that were placed in their path. Mother claims that she did not know for at least seven months after placing [C]hild in the care of [Maternal Grandfather] that [C]hild was not in his care. Clearly, she made no effort to see her child during that period of time nor at any time after that point.

Since [CYF] has become involved, Mother has been offered visitation. She has not taken advantage of that. She has not made any effort until this morning to have any contact with her child, despite having access to resources in which to secure that contact and also access to the information in order to contact her daughter directly.

In addition, [CYF] alleges that the parents' repeated and continuing incapacity or refusal to parent, the parent has caused [Child] to be without essential parental care, control or subsistence necessary for her wellbeing. We note that the requirement is also that the parent cannot or will not remedy the refusal.

\* \* \*

As it relates to Mother, again, it is clear that she has lacked any willingness to overcome any barriers. She either will not or cannot remedy the conditions which led to removal. She also cannot or will not remedy her refusal to parent.

One phone call on the morning of the hearing on the petition to terminate her parental rights is not sufficient to overcome her incapacity or unwillingness to parent as evidenced prior to the petition being filed. She has made no indication that she has any willingness to remedy her lack of parenting of [Child]; and, therefore, [Child] has been without proper care and subsistence as required.

We note, particularly in light of the fact [that] [C]hild was without proper medical care and was unable to be enrolled in school due to the parents' unwillingness to cooperate, not once did Mother contact the police or make any effort to locate her daughter other than contacting [Maternal Grandfather]. She seemed satisfied with his response in about February of 2015 that [C]hild was in the care of relatives. She appeared satisfied that [C]hild was well cared for and had no intention of making any effort to parent [C]hild.

The evidence is clear and convincing that both parents have failed or refused to perform parental duties, have evidenced a settled purpose to relinquish their claim, and continue to have incapacity or refusal to parent, which would support a termination of their parental rights on either of those grounds.

Therefore, after having a hearing on the petition, this [c]ourt is satisfied to the truth of the facts set forth in the petition, and finds that [Mother] and [Father] have forfeited their parental rights with respect to [Child].

The [c]ourt further finds that it is in the best interest of [Child] that the petition be granted. We note particularly that she has developed a bond with the foster family. They are relatives, and they have provided for all of her care. We do find that it is in her best interest, as we are required to find, that she remain in the care of the foster family. There would be no adverse effect to terminating

parental rights as neither parent has had any interaction with [C]hild for more than a year.

(N.T. Termination Hearing, 12/18/15, at 63-67).    In its Rule 1925(a)

opinion, the trial court elaborated on its findings as follows:

> After a review of the record, it is clear that there was evidence substantially beyond that which would constitute clear and convincing evidence to support the termination of [Mother's] parental rights.
>
> [CYF] first filed for Emergency Protective Custody on August 11, 2015.  At that time, [C]hild had been in the care of a kinship family since approximately July, 2014.  [Mother] agreed that at the time the petition was filed, [CYF] had sufficient evidence to prove that the return of [C]hild to [Mother] was not in [C]hild's best interest.  [Mother] also stipulated that sufficient evidence was presented at a Shelter Care hearing, also held in August, to show that return of [C]hild to [Mother] still was not in [C]hild's best interest.  [C]hild was adjudicated dependent in October with a goal of adoption, and [CYF] then filed a Petition for Involuntary Termination of Parental Rights on October 27, 2015.  At no time did [Mother] file an appeal of the adjudication of dependency or the goal of adoption, nor did she seek to change the goal.  …
>
> After a full hearing on the Petition, this [c]ourt found that clear and convincing evidence existed to show that [Mother's] rights should be terminated under 23 Pa.C.S.A. § 2511(a)(1) and (2)[ and (b)].  The [c]ourt determined that for nearly eighteen months prior to the filing of the petition, [Mother] had failed or refused to perform parental duties and that she has evidenced a settled purpose to relinquish her claim to [C]hild.  The [c]ourt further found that [Mother] continues to have an inability to parent [C]hild and that it cannot and will not be remedied by [Mother].    This [c]ourt determined that termination of [Mother's] parental rights was in the best interest of [C]hild, as she appears far more bonded with her foster family than with [Mother].
>
> In support of the [c]ourt's findings, we note that [Mother]

- 17 -

currently resides in Delaware and claims to have transportation issues. She was permitted to appear for the hearing by speakerphone. However, [CYF] offered to assist with transportation, and that offer was declined. [Mother] states that she has had drug dependency issues, and that she has been attending a methadone clinic since February, 2015, with no established time frame for when she will no longer attend the clinic. She testified that one of the reasons she has been unable to have contact with [C]hild is due to the substantial amount of time she spends at the methadone clinic. She additionally testified that she has mental health issues including depression and post-traumatic stress disorder. Mother further stated that she is unemployed and that she has not held a job since approximately June or July of 2014.

At the hearing, credible evidence was presented that since [C]hild was adjudicated dependent, [Mother] has not contacted [CYF] or visited [C]hild. Evidence was presented that since [Mother] left [C]hild with Maternal Grandfather in July, 2014, she has not seen [C]hild. Further, [Mother] has not provided…cards to [C]hild, or attempted to have any involvement with [C]hild's education or medical care. The caseworker further testified that there has been no indication that [Mother] has been able to maintain safe housing for [C]hild, nor has she verified any lawful source of any income.

Evidence was presented even that prior to July, 2014, [Mother] has a history of failing to provide parental care to [C]hild. When [C]hild resided in Delaware with [Mother], the Delaware Division of Family Services was involved due to abandonment of [C]]hild by [Mother], and [C]hild was removed from the home for approximately a year and a half. [C]hild returned to [Mother] in January, 2013. [Mother] then left [C]hild with Maternal Grandfather approximately 18 months later. Further, there are criminal charges pending in Delaware against [Mother] due to allegations of drug use in front of [C]hild and sexual abuse of [C]hild. [C]hild is now seven years old, and she has spent only approximately 18 months out of the last nearly five years in [Mother's] care. Further, she now has a much stronger bond with her foster parents than her mother, as evidenced by the fact that she refers to them as mom and

- 18 -

dad, and does not ask about the whereabouts of [Mother].

Perhaps most [convincing] to this [c]ourt's determination was [Mother's] entirely incredible testimony that she had no idea where [C]hild was, [or] the name of the kinship care family. [Mother] stated that every time she called Maternal Grandfather to inquire as to the whereabouts of [C]hild, he would not answer or say that [C]hild could not talk to her because she was not home. [Mother], despite alleging that she did not know where her child was for approximately six months, never called the police or [CYF]. [Mother] never reported [C]hild as missing. Despite [Mother's] statements, [Mother] herself testified that she learned the whereabouts of [Child] in December, 2014, and yet she still failed to attempt any contact with [C]hild.

Even since the adjudication of dependency in [October] of 2015, [Mother] has failed to contact [CYF] at any time despite [CYF]'s offer to assist with transportation. [Mother] was informed at a hearing that [CYF] wanted to facilitate contact, and Mr. Pritt, [C]hild's foster father[,] made several attempts to contact [Mother] to arrange that contact. Mr. Pritt testified that he told [Mother] she could call him anytime to speak to [C]hild, and that he would be willing to arrange visits, yet [Mother] still failed to contact him.

[Mother] had an affirmative duty to parent her child and chose not to do so. She was content with others…caring for her daughter and made no effort to locate or contact [C]hild. [Mother's] indication that others failed to act is misguided. It was [Mother's] obligation to be the parent of [C]hild, and she consistently failed to act as such.

This [c]ourt found that clear and convincing evidence on the record supported the determination that [Mother] has consistently failed to parent [C]hild and that [Mother] refuses to remedy the situation. Therefore, this [c]ourt requests that the Order entered on December 18, 2015 be affirmed.

(Trial Court Opinion, filed February 9, 2016, at 3-9). The record supports

the court's decision to terminate Mother's parental rights to Child. ***See In***

*re Adoption of K.J., supra*.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2016